UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Francine Hardy, PPA as Guardian and Next Friend of J.A.H., Jr., a minor,<br>    *Plaintiff*,<br><br>       *v.*<br><br>Olu Adebanjo, City of Waterbury, and Waterbury Board of Education,<br>    *Defendants.* | Civil No. 3:10CV974 (JBA)<br><br><br><br><br>March 30, 2012 |

RULING ON MUNICIPAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Francine Hardy filed suit on behalf of her son JAH, a minor, against Defendants City of Waterbury ("City") and Waterbury Board of Education ("Board"), as well as against Mr. Olu Adebanjo, a substitute teacher, alleging violations of the United States Constitution under 42 U.S.C. § 1983 (Count One), common law assault (Count Two), common law battery (Count Three), intentional infliction of emotional distress (Count Four), negligent supervision (Count Five), and Monell liability under 42 U.S.C. § 1983 (Count Six). Defendant Adebanjo has answered, counterclaimed against Plaintiff for common law battery, and cross–claimed against the City and Board, seeking indemnification from financial loss and alleging breach of the City's statutory obligation to provide him with protection from financial loss (Ex. C to Def.'s Mem. Supp. Summ. J. [Doc. # 40]. Defendants City and Board ("Municipal" or "City and Board" Defendants) move [Doc. # 38] for summary judgment on all Plaintiff's claims.[1] They argue that the Plaintiff has failed to state

---

[1] By separate order [Doc. # 48] their motion for summary judgment on Defendant Adebanjo's cross–claim [Doc. # 39] has been denied without prejudice on agreement.

a Fourteenth Amendment claim against either the City or the Board. For the reasons that follow, these Defendants' motion will be granted.

I.     Factual Background

Plaintiff Francine Hardy files this suit as Guardian of JAH, Jr., her minor son, who in May 2009, was in the Seventh Grade at West Side Middle School, in Waterbury, Connecticut. Defendant Olu Adebanjo was a substitute teacher in the Waterbury Public School system, and had worked in that capacity for the previous three years. In May 2009, Mr. Adebanjo was called by the City of Waterbury to substitute for an art teacher at West Side Middle School, but not for JAH's class.

During the last period of the day on May 20, 2009, Mr. Adebanjo began having trouble controlling the classroom and went into the adjoining classroom, in which JAH was a student, to request assistance from the teacher there, Mr. Daniels. Mr. Adebanjo attested that when he entered Mr. Daniel's classroom, "a student threw a marker pen at me and hit me in the back of the head," and that "[t]his was the second time that day that this student threw something at me." Mr. Adebanjo stated that "I don't know this student[']s name, but I was later told by school staff that he claimed he was a former tenant that I evicted." (Sworn Statement of Adebanjo, Ex. G to 56(a)1 Stmt. at 1.)

Mr. Daniels states he did not see JAH throw anything at Mr. Adebanjo, but told him "that I would handle [JAH], and then I went to help him with his class." (Sworn Statement of Daniels, Ex. F to 56(a)1 Stmt. at 1.) Ten minutes later, Mr. Adebanjo again sought Mr. Daniels's help with controlling his classroom. (*Id.* at 1.) After the last bell of the day rang, signaling that class was over for the day, JAH claims:

> I started to walk outside towards the hallway with the other students. Before I got out into the hallway, Mr. Olou [sic] came into my classroom and grabbed me. Mr. Olou pushed me against a wall, and was trying to hold me. I got away from him, and he grabbed me again trying to put me in a choke hold. I was trying to get away from him, but he grabbed from behind, and held only my arms. I got my left arm free, and elbowed him in the head. He let go[] after that. He grabbed onto me again, and we fell to the floor. I got up off of the ground and punched him twice in the head while he was on the floor. I fell back down to the ground when Mr. Olou grabbed me. . . . Mr. Daniels then came over and separated us. Mr. Olou then picked up a chair and acted as if he was going to hit me.

(*Id.* at 1–2.) Defendant Adebanjo described the incident as follows:

> I walked up to him to ask him why he threw a pen at me. He started to walk away from me. I told him to stop but he ignored me. I stopped him from walking away from me by holding onto his arm. When I did this, he turned and punched me two or three times on my head. I grabbed onto him so he would stop hitting me, but he was going crazy. We both fell down onto the floor. He was still trying to attack me while I was on the ground by punching and kicking me. Mr. Daniels had come over and held onto the student until he calmed down.

(Sworn Statement of Olukayode Adebanjo, Ex. G to 56(a)(1) Stmt., at 2.)[2] Although a factual dispute exists as to what happened during the May 20, 2009 incident, for summary judgment

---

[2] Mr. Daniels also described the incident from his perspective:
Through the crowd of students, came the substitute teacher. He was upset and came towards [the] student, [JAH]. I saw him with his hands on [JAH's] shoulders. [JAH] grabbed onto the teacher, and said something to the effect like, "What's up with you!" [JAH] then punched the substitute teacher in the head twice. The two fell to the ground. I ran over and grabbed [JAH] by his wrists to control him. I was able to hold [JAH] and control him until he calmed down.

(Ex. F at 1–2.)

3

purposes, the Court is required to construe the facts in the light most favorable to Plaintiff, which is JAH's version.

Plaintiff alleges that the Municipal Defendants knew, prior to this incident, that Mr. Adebanjo presented a danger to her son. In her interrogatory response, she stated that she had "personally brought it to the City's attention, at least six (6) months prior to the incident alleged in the Complaint that Mr. Adebanjo was threatening and menacing my children at School." (Pl.'s Resp. 11 to Def.'s Interrogs., Ex. C to 56(a)1 Stmt.) Plaintiff also testified at her deposition that Mr. Adebanjo had a history with her family, as her [estranged] husband was having an affair with Defendant's daughter. (Hardy Dep., Ex. D to 56(a)1 Stmt at 24:7-21.) Plaintiff also testified that she reported Mr. Adebanjo's alleged mistreatment of her children to "several people. . . [t]o my church and everyone." (*Id.* at 24:24-25.) She further stated, "I['ve] been there in several meetings, concerning this before the charade even took place. . . they can basically back me up and say yes, she has been here. And she has spoken with us about this man, Adebanjo." (*Id.* at 39:4–11.)

Plaintiff's affidavit states that "Olu Adebanjo did have problems as a teacher at the West Side Middle School during the 2008–2009 school year":

- (a)   Olu Adebanjo would stalk my children (including the minor JAH, Jr.) while they were in School;
- (b)   Olu Adebanjo would threaten to kill my children (including the minor JAH, Jr.) when they were in School;
- (c)   Olu Adebanjo would tell my children (including the minor JAH, Jr.) he was putting a "hex" on them when in School;
- (d)   Olu Adebanjo would tell my children (including the minor JAH, Jr.) he was going to make bad things happen to my family when in School;
- (e)   Olu Adebanjo would tell my children (including the minor JAH, Jr.) he was there at School to put down evil;

>   (f)   Olu Adebanjo would come to the West Side Middle School during the 2008-2009 school year on occasions when he was not assigned to work there, just to have negative interactions with my children (including the minor JAH, Jr.).

(Pl.'s Aff. [Doc. # 43-3] ¶ 2.). Plaintiff's affidavit does not include the bases for her knowledge of what occurred at school to her children that would demonstrate a basis for the admissibility of her testimony to this effect. *See* Rule 56(c)4.

II.   Discussion[3]

City and Board Defendants argue that the factual record cannot support the viability of any of the Plaintiff's claims against them, and that summary judgment should be granted as to Counts One, Five, and Six.

   A.   Count One: Plaintiff's Due Process Claim

In Count One, brought under 42 U.S.C. § 1983, JAH alleges through his mother, that the Municipal Defendants deprived him of his substantive Due Process rights under the Fourteenth Amendment, in that they are responsible for the assault and battery committed by a substitute teacher on him.

A person's rights protected by the Due Process Clause are violated when "state officials engage in conduct of such an egregious nature so as to shock the conscience."

---

[3] "Summary judgment is appropriate where, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

*County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level," while negligently–inflicted harm is insufficient to implicate substantive due process rights. *Lewis*, 523 U.S. at 849. Defendants, whose liability is claimed to arise from their alleged failure to protect JAH from Mr. Adebanjo, argue under *DaShaney v. Winnebago City Social Svcs. Dep't*, 489 U.S. 189, 195 (1989) and its progeny that the Fourteenth Amendment Due Process clause does not impose an affirmative duty on them to protect students from injury by third parties.

While the cases relied on by Defendants in their briefs and at oral argument address a substantive due process analysis where the "bad actors" at issue were third parties, here the alleged harm came from an employee of the public school system,[4] who allegedly assaulted their student JAH during school hours and on school property. (*See* Sworn Stmt. of JAH.) Plaintiff's evidence as to which municipal official she actually notified, and when she told them about Mr. Adebanjo's alleged animus toward her children is notably deficient in both clarity and specificity. It consists of her sworn discovery response that she had "personally brought it to the City's attention, at least six (6) Months prior to the incident alleged in the Complaint that Mr. Adebanjo was threatening and menacing my children at School" (Answer 11 to Def.'s Interrogatories, Ex. C to 56(a)1 Stmt.), that she reported Mr. Adebanjo's behavior "to my church and everyone" (Pl.'s Dep. at 24:24–25), and that on the day of the incident, "Michelle [Baker, the Vice Principal of West Side Middle School] said

---

[4] At oral argument, Counsel for the City and Board Defendants noted that regardless of whether Mr. Adebanjo was full–time or a part–time (or a substitute teacher), the Waterbury school system considers him an employee.

'Francine, I'm so sorry. . . You warned me about this.'" (*Id.* at 39:12–14.) However, Plaintiff also testified, "I, myself, didn't even think that Adebanjo would even put his hands on my son. . . you never had come to the point where [he] had laid hands and physically harmed one of [my children]." (Pl.'s Dep., Ex. D to 56(a)(1) Stmt. at 39:15–20.)

For the purposes of this motion, the Court will assume without deciding that Plaintiff's evidence of her "warning" to the Vice Principal put Defendants on notice that Defendant Adebanjo had threatened her children in the ways she describes. The issue relevant to the City and Board's liability, however, is not whether Mr. Adebanjo's alleged assaultive behavior shocks the conscience, but whether the Defendants' conduct in assigning him to substitute in the school where JAH attended was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," *Lewis*, 523 U.S. at 848 n.8, so as to amount to a violation of the Plaintiff's substantive due process rights.

Assuming that the City and Board Defendants knew about "negative interactions" between Mr. Adebanjo and JAH (*see* Pl.'s Aff. ¶ 2(f)), it is undisputed that Mr. Adebanjo was never assigned as a teacher in JAH's class (*see* Pl.'s Resp. to Def.'s Interrog. No. 5), and nothing in the record suggests that Mr. Adebanjo had a history of "negative interactions" with any *other* students, or had ever engaged in any unconstitutional conduct.[5] The record

---

[5] The absence of evidence that Mr. Adebanjo had never had trouble with other students contrasts with *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246 (2d Cir. 2001), addressing the "shocks the conscience" standard in a school context. In *Johnson*, the complaint alleged that "at the time [the student] was assaulted the Supervisors were aware that [the gym teacher] has assaulted students on four previous occasions." 239 F.3d at 255 ("If these factual allegations are borne out, a jury could find the Supervisors personally involved in the unconstitutional deprivation on the basis that they were either grossly negligent in supervising [the gym teacher] or that they exhibited deliberate indifference to the students' rights by failing to act on information that unconstitutional acts were

7

is unrebutted that Mr. Adebanjo was "a substitute teacher for the city of Waterbury for the past three years. . . [] taught at West Side Middle School about ten times this past school year. . . [and] never had any problems at West Side Middle School or any other school that I taught at." (Sworn Statement of Adebanjo, Ex. G to 56(a)(1) Stmt.)

Defendants' assignment of Mr. Adebanjo to substitute teach a different class from JAH's class, where there had been no complaints of prior assaults or unconstitutional behavior towards students on Mr. Adebanjo's part, falls far short of actionable deliberate indifference, and stands in stark contrast with circumstances in which the Second Circuit found deliberate indifference sufficient to "shock the contemporary conscience." For instance, in *Okin v. Village of Cornwall on Hudson*, 577 F.3d 415, 431 (2d Cir. 2009), the Second Circuit found that the police officer defendants had exhibited deliberate indifference to repeated domestic assaults on the plaintiff, and that, for the purposes of summary judgment such deliberate indifference had affirmatively created or enhanced the plaintiff–victim's risk of violence, as the defendants had refused to arrest the abusive boyfriend. In denying the defendant's motion for summary judgment, the court held that "this is a case where deliberate indifference is the requisite state of mind for showing that defendants' conduct shocks the conscience." *Id*; *see also Pena v. DePrisco*, 432 F.3d 98, 114 (2d Cir. 2005) (finding that the police department's disregarding the danger of off–duty officers drinking and driving, "over an extended period of time and in the face of action that presented obvious risk of severe consequences and extreme danger, falls within the realm of behavior that can 'properly be characterized as . . . conscience shocking'"). Even if Plaintiff characterized Ms. Baker's failure to take some undesignated action vis–a–vis Mr. Adebanjo

---

occurring.")

8

as negligence, it would be "categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. 833, 849 (1998) ("We have . . . rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials.").

Accordingly, because the summary judgment record cannot support Plaintiff's claim that the City and Board Defendants acted with deliberate indifference to JAH's rights, Plaintiff has not shown any conscience–shocking behavior attributable to the City and Board Defendants, and summary judgment is granted as to Count One of the Amended Complaint.

B.    Plaintiff's *Monell* Claim

In Count Six of Plaintiff's Amended Complaint, Plaintiff alleges that the City and Board Defendants failed to train and monitor their employee Olu Adebanjo, in violation of 42 U.S.C. § 1983. Specifically, Plaintiff alleges that "under color of the policies, customs, or usages that they sanctioned":

(a)    They knew or should have known that their employee Olu Adebanjo was a danger to the Plaintiff, by pattern, yet they took no action to stop or prevent the danger;

(b)    They knew or should have known their employee Olu Adebanjo did not possess the necessary judgment and control to be employed as a teacher within the Waterbury Public School System, by pattern, yet they took no action to stop or prevent the danger;

(c)    They failed to properly train their employee Olu Adebanjo in his role as a teacher within the Waterbury Public School System leading to a constitutional violation; and

(d)    They failed to properly monitor the pattern of actions and behaviors of their employee Olu Adebanjo within the Waterbury Public School System.

(Am. Compl. Count Six ¶ 6.)

In *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978), the Supreme Court held that "a municipality cannot be held liable solely because it employs a tortfeasor or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Further, "constitutional torts committed by city employees without official sanction or authority do not typically implicate the municipality in the deprivation of constitutional rights, and therefore the employer-employee relationship is in itself insufficient to establish the necessary causation." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 125 (2004). "When a subordinate municipal official is alleged to have committed the constitutional violation, municipal liability turns on the plaintiffs' ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority." *Id.* at 126. One method of implicating a policymaking official through subordinates' conduct is to show that the "policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Id.* (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992) (finding that "the plaintiff had adduced sufficient evidence from which the jury could reasonably infer an unconstitutional NYPD practice of sex discrimination," and reversing the district court's grant of judgment notwithstanding the verdict to the defendants).

Here, although Plaintiff alleges a number of failures on the part of the State Defendants, she has provided no factual support for these assertions. Plaintiff shows no causal link between Mr. Adebanjo's alleged assaultive behavior toward JAH and any policies or customs of the City of Waterbury or the Waterbury Board of Education, which is required under a "failure to train" theory of liability under *Monell. See City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (requiring that plaintiffs establish that officials' purported failure to

10

train occurred under circumstances that could constitute deliberate indifference, and that plaintiffs identify a specific deficiency in the training program and establish that the deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation).

Further, as to Plaintiff's allegations of improper supervision, Plaintiff bases these claims on this single act of misconduct by an employee, and has not identified any specific municipal policy that contributed to the alleged harm. "Since the existence of a policy of nonsupervision amounting to deliberate indifference to constitutional rights cannot be established by inference solely from evidence of the occurrence of the incident in question, . . . a plaintiff cannot prevail on a Section 1983 claim against a municipality without introducing other evidence." *Fiacco v. City of Rennselear*, 783 F.2d 319, 328 (2d Cir. 1986) (internal citations omitted). As discussed *supra*, the record contains no evidence that the City and Board had previously failed to monitor the behavior of teachers, including Mr. Adebanjo, and that such failure to monitor had led to similar harms against other students.

Because Plaintiff has not identified any policy or training deficiency on the part of the City and Board Defendants to show that their alleged deliberate indifference "actually caused" the alleged constitutional deprivation, namely, the assault on JAH, Defendants' motion for summary judgment will be granted on this ground.

C.   Count Five: Negligent Supervision

City and Board Defendants also argue that summary judgment should be granted as to Count Five of Plaintiff's Amended Complaint, which alleges negligent supervision on the part of the City and the Board. Defendants argue that Plaintiff has failed to state a claim in

negligence against the City and the Board, and that they are entitled to governmental immunity under Conn. Gen. Stat. § 52-557n.

### 1. The Tort of Negligent Supervision

Under Connecticut law, an employer may be liable for negligent supervision of its employees. *Roberts v. Circuit–Wise, Inc.*, 142 F. Supp.2d 211, 214 (D. Conn. 2001); *see also Gutierrez v. Thorne*, 13 Conn. App. 493, 500 (1988). To succeed on a negligent supervision claim, "[a] plaintiff must plead and prove that she suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise. A defendant does not owe a duty of care to protect a plaintiff from another employee's tortious acts unless the defendant *knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct.*" *Roberts*, 142 F. Supp.2d at 214 (emphasis added).

As discussed above with respect to Plaintiff's Due Process and *Monell* claims, the attestations contained in Plaintiff's affidavit fail to show that Defendants knew or should have known of any propensity of Mr. Adebanjo to engage in assaultive behavior toward students, including JAH. In fact, even Plaintiff did not anticipate such conduct. (*See* Pl.'s Dep., Ex. D to 56(a)(1) Stmt., at 39:15–20.) Further, Defendants never placed Mr. Adebanjo in the same classroom as JAH, who is the only student with whom Defendants arguably had reason to know that Adebanjo had "negative interactions."

### 2. Governmental Immunity

Even if Plaintiff could show that Defendants "knew or reasonably should have known" of Mr. Adebanjo's propensity to engage in this conduct toward JAH, the City and Board Defendants claim governmental immunity, both at common law and under Conn. Gen. Stat. § 52-557n, because their employees were engaged in public, discretionary acts.

12

At common law, so long as a municipal employer's challenged actions were discretionary in nature, they were entitled to immunity from liability for actions taken in discharging their public duties. *See, e.g.*, *Ryszkiewicz v. New Britain*, 193 Conn. 589, 593 (1984) ("At common law, Connecticut municipalities enjoy governmental immunity, in certain circumstances, from liability for their tortious acts."). The same immunity from liability is provided for municipalities under Conn. Gen. Stat. § 52-557n, which states, in relevant part:

> Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

Under Connecticut law, to enjoy the defense of governmental immunity, the City and Board Defendants must show that (1) their actions were public in nature, and (2) their employees were engaged in discretionary acts. *See Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 167–70 (1988).

Here, City and Board Defendants maintain that operation of a municipal school system falls in the category of "public actions," and that actions taken in retaining or assigning Mr. Adebanjo to substitute teach an art class were purely discretionary in nature. The Court agrees. In the absence of any evidence that Waterbury makes its substitute teacher assignments automatically from a pre–ranked list for this purpose, the choice of a particular substitute teacher for a particular public school classroom requires exercise of judgment and discretion. Further, "[m]unicipalities, by providing public education, are engaged in governmental duties." *Couture v. Bd. of Educ.*, 6 Conn. App. 309, 312 (1986); *see also Martel v. Metropolitan Dist. Comm'n*, 275 Conn. 38, 48–49 (2005) ("Governmental acts are

13

performed wholly for the direct benefit of the public and are supervisory or discretionary in nature."); *Heigl v. Bd. of Educ. of Town of New Canaan*, 218 Conn. 1, 8–9 (1991) (concluding that the "the board of education was engaged in a discretionary activity in establishing the open campus policy. As a result, the board is immune from tort liability by reason of the doctrine of governmental immunity").

Absent an applicable exception, City and Board defendants are entitled to governmental immunity on Plaintiff's negligent supervision claim. Under Connecticut law, the "discrete person/imminent harm" exception requires the Court to determine whether the evidence presented is sufficient to establish that it was apparent to the City and Board Defendants that their failure to provide adequate supervision would be likely to subject schoolchildren or JAH to imminent harm. *See, e.g.*, *Burns v. Bd. of Educ. of City of Stamford*, 228 Conn. 640, 650 (1994) (the plaintiff schoolchild who slipped and fell due to icy conditions on a main accessway of the school campus, during school hours, "was one of a class of foreseeable victims to whom the superintendent owed a duty of protection in relation to the maintenance and safety of the school grounds, and accordingly governmental immunity is no defense"). Here, JAH is alleged to have been a discrete target of Mr. Adebanjo's ire or malice, thus satisfying the "discrete person" criterion. The "imminent harm" aspect of this exception requires evidence of the dangerous condition limited in duration and in geography. For example, in *Doe v. Bd. of Educ. of City of New Haven*, 76 Conn. App. 296 (Conn. App. 2003), the court found that this exception did not apply where the alleged danger—insufficient hallway supervision which allegedly contributed to the sexual assault of plaintiff by her classmates in a vacant classroom— "was not limited to a particular area of the school and a particular time period," 76 Conn. App. at 295. The court

14

concluded that, "[b]ecause the facts alleged by the plaintiff are insufficient to establish that it was apparent to the defendant that its failure to act would be likely to subject students to imminent harm, the defendant is immune from liability for its discretionary acts." 76 Conn. App. at 296.

Here, the record shows that the harm alleged by Plaintiff was neither limited in duration nor in geographic scope. Plaintiff's responses to Defendants' interrogatories show no limitation on the duration of the endangering condition alleged, as she stated that she had "brought [the issue] to the City's attention, at least six (6) months prior to the incident alleged in the Complaint" (Ex. C to 56(a)(1) Stmt.), and Plaintiff herself did not foresee a risk of physical assault (Ex. D at 39:15–20) ("I, myself, didn't even think that Adebanjo would even put his hands on my son."). Further, the risk of harm occurring generally at JAH's school is insufficiently limited to implicate this exception. Thus, the record is insufficient to show that the risk of harm to JAH was sufficiently limited in time and place, and the City and Board Defendants are entitled to governmental immunity for their discretionary acts.

III.   Conclusion

For the reasons discussed above, the City and Board Defendants' motion for summary judgment against Plaintiff Hardy is GRANTED as to Counts One, Five and Six. The Clerk is directed to terminate these Defendants from this case.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of March, 2012.